CC-1999-173                                                                1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br>Peticionario<br><br>v.<br><br>Richard Rodríguez Velázquez<br>Recurrido | Certiorari<br><br>2000 TSPR 146 |
|---|---|

Número del Caso: CC-1999-0173

Fecha: 10/03/2000

Tribunal de Circuito de Apelaciones:

Circuito Regional V

Juez Ponente:

Hon. José M. Aponte Jiménez

Oficina del Procurador General:

Lcda. Marta Maldonado Maldonado
Procuradora General Auxiliar

Abogada de la Parte Recurrida:

Lcda. Cándida Valdespino Zapata

Materia: Ley 54

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Recurrente

            v.                          CC-1999-173          Certiorari

Richard Rodríguez Velázquez

      Recurrido

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

      San Juan, Puerto Rico, a 3 de octubre de 2000.

      Nos corresponde resolver si existe impedimento para otorgar el beneficio de sentencia suspendida a una persona que comete un nuevo delito bajo la Ley de Violencia Doméstica o delitos relacionados con ésta, mientras disfruta del programa de desvío en ella contemplado.

                                    I

      El 3 de febrero de 1996, el señor Richard Rodríguez Velázquez (en adelante "el recurrido"), fue acusado por violar el Artículo 3.2 –maltrato agravado– de la Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. sec. 632, conocida como la Ley para la Prevención e Intervención

con la Violencia Doméstica, siendo la víctima la señora Carol Castellar Velázquez, quien convivió con el acusado. El 22 de abril de 1996 formuló alegación de culpabilidad por el delito imputado. El Tribunal de Primera Instancia suspendió los procedimientos en su contra, a la luz de lo dispuesto por el Artículo 3.6 de la Ley 54, *supra*, –programa de desvío. Es decir, el tribunal no dictó sentencia y sometió al recurrido a libertad a prueba, sujeto a varias condiciones, entre ellas las siguientes: ingresar en el programa de reeducación y readiestramiento en el Instituto Ponceño del Hogar; abstenerse de ingerir bebidas alcohólicas y evitar cualquier violación a las leyes de Puerto Rico, en cuyo caso cumpliría la sentencia impuesta por ley.

El 10 de octubre de 1997, el Ministerio Público solicitó la revocación del beneficio de desvío concedido, ya que el 5 de octubre del mismo año, el recurrido cometió el delito de maltrato agravado en contra de la señora Alí Marie Quiñones Santiago. Además se solicitó la revocación, porque el recurrido estaba haciendo uso de bebidas alcohólicas y porque no estaba asistiendo a las reuniones con el Oficial Probatorio ni al Instituto Ponceño del Hogar. Por dichos hechos, el 10 de noviembre de 1997, se presentó nueva acusación contra el recurrido por infracción al Artículo 3.2 de la Ley 54, *supra*.

El 23 de enero de 1998 se celebró una vista final de revocación, en la cual la Oficial Probatorio le informó al tribunal mediante "Acta" que el recurrido no acudió a las citas del Oficial Probatorio; que no acudió a las citas del Instituto Ponceño del Hogar; que cometió nuevo delito bajo la Ley 54; que utilizaba bebidas alcohólicas y que tenía un caso pendiente de amenaza.[1] El tribunal dejó en suspenso la revocación del desvío y le concedió al recurrido una segunda oportunidad para que este ingresara en un Hogar Crea o en el Hogar Nueva Cosecha para recibir tratamiento de alcoholismo.

El 10 de febrero de 1998, el recurrido hizo alegación de culpabilidad por la nueva acusación y el tribunal, en el mismo acto, le impuso tres (3) años de cárcel por el caso inicial y dos (2) años de cárcel por el segundo caso, para cumplirlos de forma consecutiva y bajo el régimen de la Ley de Sentencias Suspendidas, 34 L.P.R.A. sec. 1027. Esta sentencia suspendida estuvo condicionada a que el recurrido continuara viviendo en el Hogar Nueva Cosecha.

Inconforme, el Pueblo de Puerto Rico, representado por el Procurador General, presentó ante el Tribunal de Circuito de Apelaciones una petición de *certiorari*. Planteó que no debió aplicarse la Ley de Sentencias Suspendidas, pues en el presente caso se concedió el beneficio del programa de desvío bajo la Ley 54 y el recurrido incumplió las condiciones impuestas. El 3 de febrero de 1999,

el tribunal apelativo resolvió que no existía impedimento para concederle una probatoria al recurrido bajo la Ley de Sentencias Suspendidas. Ello ya que al concederse el desvío bajo la Ley 54, no se hace declaración de culpabilidad ni se dicta sentencia, por lo que el recurrido no ha sido convicto, sentenciado ni recluido en prisión con anterioridad a la comisión del delito por el cual fue procesado. No obstante, el foro *a quo* devolvió el caso al tribunal de instancia para que se rindiera un informe pre-sentencia, ya que se otorgó la sentencia suspendida sin el beneficio de dicho informe.

Oportunamente, el Procurador General recurrió ante nos mediante "Moción en Auxilio de Jurisdicción" y petición de *certiorari*, aduciendo como errores los siguientes:

> Incidió el Tribunal de Circuito de Apelaciones al concluir que no existe impedimento alguno para otorgar una probatoria bajo la Ley General de Sentencia Suspendida (Ley Núm. 259) a una persona que comete una segunda infracción a la Ley de Violencia Doméstica (Ley Núm. 54) y que se benefició del desvío contemplado en dicha Ley (Art. 3.6).
>
> Erró el Tribunal de Circuito de Apelaciones al devolver el presente caso a Instancia para que se presente un Informe pre-sentencia con el único propósito de determinar si se le concede o no una sentencia suspendida al recurrido bajo la Ley Núm. 259, pues como cuestión de derecho en este caso no procede otro beneficio de libertad a prueba.

El 10 de marzo de 1999, emitimos Resolución expidiendo el auto de *certiorari*. Contando con el favor de la comparecencia de las partes, procedemos a resolver.

## II

El artículo. 3.6 de la Ley 54, *supra*, provee un mecanismo de desvío. Este dispone:

> Una vez celebrado el juicio y convicto que fuere o que el acusado haga alegación de culpabilidad por cualesquiera de los delitos tipificados en este Capítulo, el tribunal podrá, motu proprio o mediante solicitud del Ministerio Fiscal o de la defensa, suspender todo procedimiento y someter a la persona convicta a libertad a prueba, sujeto a que ésta participe en un programa de reeducación y readiestramiento para personas que incurren en conducta maltratante en la relación de pareja. [....]
> Esta alternativa de desvío solamente estará disponible cuando existan las circunstancias siguientes:
>
> (a)  Se trate de una persona que no haya sido convicta previamente por la comisión de los delitos establecidos en este Capítulo o delitos similares establecidos en las leyes del Estado Libre Asociado de Puerto Rico o de Estados Unidos contra la persona de su cónyuge, ex cónyuge, persona con quien cohabita o haya cohabitado, persona con quien sostiene o haya sostenido una relación consensual, o persona con quien haya procreado un hijo o una hija.

---

[1] Apéndice, Anejo V.

(b)       [....]
(c)       [....]

El tribunal tomará en consideración la opinión de la víctima sobre si se le debe conceder o no este beneficio e impondrá los términos y condiciones que estime razonables y el período de duración de la libertad a prueba que tenga a bien requerir, previo acuerdo con la entidad que prestará los servicios, cuyo término nunca será menor de un (1) año, ni mayor de tres (3).

Si la persona beneficiada por la libertad a prueba que establece esta sección incumpliere con las condiciones de la misma, el tribunal previo celebración de vista podrá dejar sin efecto la libertad a prueba y procederá a dictar sentencia.

Si la persona beneficiada por la libertad a prueba que establece esta sección no viola ninguna de las condiciones de la misma, el tribunal, previa recomendación del personal competente a cargo del programa al que fuere referido el acusado, en el ejercicio de su discreción y previa celebración de vista, podrá sobreseer el caso en su contra.

El sobreseimiento bajo esta sección se llevará a cabo sin pronunciamiento de sentencia por el tribunal, pero se conservará el expediente del caso en el tribunal, con carácter confidencial, no accesible al público y separado de otros récords a los fines exclusivos de ser utilizado por los tribunales al determinar, en procesos subsiguientes, si la persona cualifica para acogerse a los beneficios de esta sección.

El sobreseimiento del caso no se considerará como una convicción a los fines de las descualificaciones o incapacidades impuestas por ley a los convictos por la comisión de algún delito....

El sobreseimiento de que trata esta sección sólo podrá concederse en una ocasión a cualquier persona.

Este artículo provee un mecanismo para conceder un privilegio de libertad a prueba a ciertas personas. Sus beneficios están limitados a personas responsables de infringir alguna disposición de la Ley 54, que no hayan sido convictas anteriormente por delitos relacionados a esta misma ley, o que anteriormente no se les haya concedido dicho beneficio. Según lo establecido, el tribunal puede, luego de la celebración del juicio o de una alegación de culpabilidad, someter a la persona a libertad a prueba con las condiciones y términos que estime apropiados.

No obstante, debemos precisar, que el tribunal no dicta sentencia. De incumplirse alguna condición del desvío, entonces el tribunal revocará el beneficio y procederá a dictar la sentencia que estime correspondiente.

El programa de desvío bajo la Ley 54 es análogo al programa de desvío que provee la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404 y la Regla 247.1 de Procedimiento Criminal, 34 L.P.R.A. Ap.II. *Pueblo v. Martínez Lugo*, res. el 10 de febrero de 2000, 2000 T.S.P.R. 20, 2000 J.T.S. 39, nota 4.

Sin embargo, en el caso de la Ley 54, *supra*, la intención de la Asamblea Legislativa fue crear un programa de desvío *sui generis* con sus particularidades intrínsecas al problema atendido por dicha ley. Un programa de libertad a prueba análogo a la sentencia suspendida. Veamos.

La Ley de Sentencias Suspendidas es el estatuto general que provee el mecanismo alterno para que un convicto cumpla su sentencia fuera de prisión. *Pueblo v. Texidor Seda*, 128 D.P.R. 578 (1991). Así, su sección 1027, dispone en lo pertinente:

> El Tribunal de Primera Instancia, podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menor de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, infracción a las secs. 415 y 416a del Título 25 en su modalidad de delito grave y secs. 418 y 420 del título 25 conocidas como la "Ley de Armas de Puerto Rico", ... y podrá asimismo suspender los efectos de la sentencia que hubiere dictado en todo caso de delito menos grave que surja de los mismos hechos o de la misma transacción que hubiere dado lugar, además, a sentencia por delito grave que no fuere de los excluidos de los beneficios de este capítulo, incluyendo el caso en que la persona haya sido declarada no culpable en dicho delito grave o rebajado dicho delito grave a delito menos grave y así convicta y ordenará que la persona sentenciada quede en libertad a prueba siempre que al tiempo de imponer dicha sentencia, concurran todos los requisitos que a continuación se enumeran:
>
> (1)  Que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fuere procesada y a la cual no se hubieren suspendido los efectos de una sentencia anterior por delito grave;
>
> (2)  que las circunstancias en que se cometió el delito no evidencien que existe en el autor del mismo un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico;
>
> (3)  que el juez sentenciador tenga ante sí un informe que le haya sido rendido por el Administrador de Corrección después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada y que, del contenido de ese informe pueda dicho juez sentenciador concluir que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad.

Es decir, la Ley de Sentencias Suspendidas provee una medida alterna a la pena de cárcel. Los términos "sentencia suspendida" y "libertad a prueba" se utilizan indistintamente; este último derivándose del latín *probatio*, que significa "prueba". *Pueblo v. Molina Virola*, res. el 22 de octubre de 1996, 141 D.P.R. __ (1996), 96 J.T.S. 133. Mediante la concesión de este beneficio, el tribunal suspende la ejecución de la sentencia y permite al convicto de delito quedar en libertad durante todo o parte del término de la pena, sujeto a que éste observe buena conducta y cumpla con todas aquellas restricciones que el tribunal le imponga.

El propósito de la sentencia suspendida es uno rehabilitador, centralizado en la aptitud del individuo de convertirse en un miembro útil de la sociedad. *Pueblo*

*v. Zayas Rodríguez*, supra; *Pueblo v. Texidor Seda*, supra; *Vázquez v. Caraballo*, 114 D.P.R. 272 (1983). La idea básica tras el mecanismo de la sentencia suspendida es lograr que un convicto de delito viva una vida productiva en la sociedad, alejado del trasiego delictivo, bajo un sistema de supervisión. *Pueblo v. Texidor Seda*, supra; *Pueblo v. Vega Vélez*, 125 D.P.R. 188 (1990).

La concesión del beneficio de sentencia suspendida es discrecional. El disfrute del mismo es un privilegio, no un derecho. *Pueblo v. Zayas Rodríguez*, res. el 17 de febrero de 1999, 99 T.S.P.R. 15, 99 J.T.S. 16. En vista de ello, la concesión de tal privilegio a un convicto que cualifica *prima facie*, descansa en la sana discreción del tribunal. *Íd.*; *Pueblo v. Torres Rivera*, 137 D.P.R. 630 (1994). Por lo tanto este es un privilegio limitado, que se concede en aquellos casos en que el legislador ha expresado que existe una justificación para evitar su encarcelación. *Pueblo v. Pérez Rivera*, 129 D.P.R. 911 (1991). Hemos reiterado que la ausencia de antecedentes penales no es por sí sola causa suficiente para que un convicto obtenga libertad a prueba. *Pueblo v. Torres Rivera,* supra; *Pueblo v. Texidor Seda*, supra.

Con respecto a la concesión de una sentencia suspendida, el juez de instancia tiene que analizar y determinar **si la persona que reclama la concesión del privilegio es acreedora o no al mismo; ello de acuerdo a las virtudes y defectos que esa persona posea**. *Íd.* Dicha persona no puede haber sido convicta, sentenciada y recluida anteriormente por delito grave; no se le puede haber suspendido los efectos de una sentencia anterior por delito grave; las circunstancias en que cometió el delito no pueden evidenciar que en éste existe un problema de conducta o de carácter para cuya solución favorable se requiera su reclusión; y tiene que existir un informe del Administrador de Corrección.

Es propio destacar que anteriormente hemos equiparado el programa de desvío bajo la Ley de Sustancias Controladas, *supra*, con la Ley de Sentencias Suspendidas. *Pueblo v. Martínez Lugo*, supra. Sin embargo, también hemos recalcado que existe una diferencia entre estos programas de desvío y la sentencia suspendida. Esta estriba en que, bajo el programa de desvío no se dicta sentencia. Esto significa que queda suspendido el procedimiento hasta tanto otra cosa disponga el tribunal. *Íd.* En cambio, en la Ley de Sentencias Suspendidas, se dicta sentencia contra una persona y luego de dictada, se suspenden los efectos de la sentencia.

No obstante, esta diferencia no es obstáculo para que el programa de desvío bajo la Ley 54 se considere como una libertad a prueba. Esto cumplirá el propósito de que una vez se cometa un nuevo delito bajo la misma ley o cualquier delito relacionado mientras se disfruta de este privilegio, un individuo no cualificará

para cumplir sus sentencias por ambos delitos bajo el beneficio de sentencia suspendida. Ello es cónsono con la intención legislativa al aprobarse la Ley 54.

III

Reiteradamente hemos resuelto que las leyes hay que interpretarlas y aplicarlas en comunión con el propósito social que las inspira, sin desvincularse de la realidad y del problema humano que persiguen resolver. *Pueblo v. Zayas Rodríguez*, supra; *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735 (1992). Es principio cardinal de hermenéutica que al interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la legislatura al aprobarla. Por lo tanto, la determinación de un tribunal debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener. La obligación fundamental en estos casos, es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley. *González Pérez v. ELA*, 138 D.P.R. 399 (1995).

La Ley para la Prevención e Intervención con la Violencia Doméstica, *supra*, fue creada para proteger la vida, la seguridad y la dignidad de hombres y mujeres. A través de esta política pública, se propicia el desarrollo, establecimiento y fortalecimiento de remedios eficaces para ofrecer protección y ayuda a las víctimas, alternativas para la rehabilitación de los ofensores y estrategias para la prevención de la violencia doméstica. La Ley 54 fue creada con una clara política pública contra la violencia doméstica. Nuestro Gobierno la repudia enérgicamente por ser contraria a los valores de paz, dignidad y respeto que este pueblo quiere mantener para los individuos, las familias y la comunidad en general. Artículo 1.2 de la Ley 54.

La Ley 54 es una de vanguardia. Está amparada en sistemas modelos contra la violencia doméstica. De ahí, el programa de desvío que tiene disponible para sus ofensores. Programas similares existen en jurisdicciones tales como Massachusets, Nueva York y Florida. No obstante, en estos programas se atiende rigurosamente la situación de los reincidentes. Cuando un individuo maltratante es puesto en uno de estos programas, y se ausenta excesivamente de las sesiones a las que está compelido a asistir o incurre en nuevos actos de violencia doméstica, demuestra signos de alerta tanto para la policía como para la mujer maltratada.[2] Por lo tanto, estos modelos de programas contra la violencia doméstica promueven una gran variedad de sanciones legales, tales como consejería ordenada por los tribunales así como una mayor severidad en casos que previamente no fueron

---

[2] Betsy Tsai, *The Trend Toward Specialized Domestic Violence Courts: Improvements on an Effective Innovation*, 68 Fordham L. Rev., 1285, 1300 (2000).

castigados.[3] La imposición de sanciones más severas por los tribunales, puede potencialmente enviar un mensaje a los individuos maltratantes de que su conducta no será tolerada.[4]

El propósito de la Ley 54 es un corolario del interés apremiante del Estado en disuadir a sus miembros para que desistan de las agresiones perpetradas entre parejas y en modificar patrones de conducta nocivos que tan arraigados están en nuestro pueblo. *Véase: Pueblo v. Rivera Morales*, 133 D.P.R. 444 (1993).

Este interés del Estado tiene que ser salvaguardado por los jueces, quienes somos la última autoridad en el sistema judicial. Si no logramos manejar los incidentes de violencia, en este caso en específico contra la mujer, con el enfoque e interés judicial apropiados, corremos el peligro de hacer que estos crímenes sean considerados como algo trivial e insignificante. Por tales motivos, los jueces no podemos ignorar la seriedad de estos crímenes. Restarles importancia limitaría la efectividad de la intervención judicial en este tipo de casos y agravaría un ya ingente problema social. *Pueblo v. Esmurria*, 117 D.P.R. 884 (1986).

IV

En el presente caso nos encontramos ante un individuo acusado por el delito de maltrato agravado bajo la Ley 54. Una vez hizo alegación de culpabilidad, conforme al artículo 3.6 no se le dictó sentencia y fue referido a un programa de reeducación. No obstante, el recurrido no acudía a las citas con el oficial probatorio, no acudía a las citas en el instituto y utilizaba bebidas alcohólicas. No conforme con ello cometió un nuevo delito de maltrato agravado y tenía un caso pendiente de amenaza. Así las cosas, el tribunal de instancia le revocó el beneficio del desvío y lo sentenció por ambos casos. Ese mismo día le otorgó el beneficio de sentencia suspendida.

Tanto el tribunal de instancia, como el tribunal apelativo y la defensa, razonaron que el recurrido cualificaba para disfrutar del privilegio de sentencia suspendida porque al momento de cometer el segundo delito no había sido convicto de delito alguno. No nos persuaden.

Ciertamente nos encontramos ante una situación en que ni el artículo 3.6 de la Ley 54, ni la Ley de Sentencias Suspendidas arrojan luz sobre esta controversia. Por ello acudimos al historial legislativo de la Ley 54. A la luz de éste y del análisis que esbozamos anteriormente, equiparamos el régimen del programa de desvío de la Ley 54 con el de la sentencia suspendida. Por ello, resolvemos que el recurrido, al haber cometido un nuevo delito de maltrato

---

[3] *Íd.*, pág. 1314.

[4] *Íd.*, pág. 1320.

agravado, mientras disfrutaba del desvío, no cualifica para disfrutar del privilegio de sentencia suspendida al revocarse el desvío, dictarse la sentencia por el primer delito del cual se declaró culpable y dictarse coetáneamente la sentencia por el segundo delito cometido.

Una persona que no es lo suficientemente responsable como para cumplir con las condiciones de un programa de libertad a prueba bajo la Ley 54, y que para colmo de males incurre en nueva conducta delictiva bajo esa misma ley o delitos relacionados, ha demostrado que no es acreedor a tal privilegio. Esto así, ya que no responde a los mecanismos de control. Demuestra con tal actitud de total desidia y falta de respeto a los tribunales, que no es apto para vivir una vida productiva en la sociedad, alejado del comportamiento delictivo, fin básico de la Ley de Sentencias Suspendidas. *Pueblo v. Texidor Seda*, supra.

A tenor de lo anterior, este Tribunal resuelve hoy, que una persona que comete una infracción a la Ley 54 o que cometiere delitos relacionados a esta misma ley mientras disfruta del privilegio de un programa de desvío bajo la Ley 54, no podrá disfrutar de una sentencia suspendida. Resolver lo contrario equivaldría a tolerar la conducta violenta de este individuo y a fomentar la criminalidad. Esto sería totalmente contrario al propósito de la Asamblea Legislativa al aprobar esta ley.[5]

Mediante este curso decisorio estamos salvaguardando el interés apremiante del Estado de proteger a las víctimas de violencia doméstica, así como de disuadir a los miembros de la sociedad puertorriqueña para que desistan de las agresiones perpetradas contra sus parejas y para que no tengan la idea equivocada de que estos crímenes son considerados como algo trivial e insignificante.

Por los fundamentos expuestos con anterioridad se revoca la sentencia del Tribunal de Circuito de Apelaciones y se deja sin efecto la sentencia suspendida concedida al Sr. Richard Rodríguez Velázquez.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

[5] *Véase*: Exposición de Motivos de la Ley Núm. 54 de 15 de agosto de 1989, Leyes de Puerto Rico de 1989, págs. 222-224.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrente

       v.                   CC-1999-173        Certiorari

Richard Rodríguez Velázquez

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 3 de octubre de 2000.

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia del Tribunal de Circuito de Apelaciones y se deja sin efecto la sentencia suspendida concedida al Sr. Richard Rodríguez Velázquez.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez concurre con el resultado con opinión escrita. El Juez Asociado señor Hernández Denton disiente sin opinión escrita.

                           Isabel Llompart Zeno
                             Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

EL PUEBLO DE PUERTO RICO

     Recurrente

       v.

                                    CC-1999-173   Certiorari

RICHARD RODRÍGUEZ VELÁZQUEZ

     Recurrido

Opinión concurrente emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 3 de octubre de 2000.

La controversia ante nuestra consideración se circunscribe a la siguiente interrogante: ¿es procedente la concesión de beneficios de la Ley de Sentencias Suspendidas a una persona que hace alegación de culpabilidad por violación a un delito tipificado por la Ley de Violencia Doméstica, cuando ya se encontraba sometido a un programa de desvío como consecuencia de una alegación de culpabilidad por otro delito tipificado por la misma ley cometido con anterioridad?

A tenor con la intención legislativa, entendemos, al igual que la opinión mayoritaria,

que la contestación es en la negativa.  No obstante, nuestro fundamento se encamina en forma algo distinta con respecto a la interpretación conceptual de los efectos del beneficio de desvío que provee el Art. 3.6 de la Ley de Violencia Doméstica, sobre los beneficios que provee la Ley de Sentencias Suspendidas.  Veamos.

I

El Art. 3.6 de la Ley de Violencia Doméstica[6] dispone lo siguiente:

Una vez celebrado el juicio y convicto que fuere o que el acusado haga alegación de culpabilidad por cualesquiera de los delitos tipificados en este Capítulo, el tribunal podrá, motu proprio o mediante solicitud del Ministerio Fiscal o de la defensa, suspender todo procedimiento y someter a la persona convicta a libertad a prueba, sujeto a que ésta participe en un programa de reeducación y readiestramiento para personas que incurren en conducta maltratante en la relación de pareja.  Antes de hacer cualquier determinación al respecto, el tribunal deberá escuchar al Ministerio Fiscal.  Disponiéndose, que en el caso del delito de agresión sexual conyugal, el desvío del procedimiento sólo estará disponible para los casos en que el acusado sea el cónyuge o cohabite con la víctima al momento de la agresión sexual, siempre y cuando dicha cohabitación no sea adúltera y cumpla con las circunstancias que se disponen más adelante.

Esta alternativa de desvío solamente estará disponible cuando existan las circunstancias siguientes:

(a) Se trate de una persona que no haya sido convicta previamente por la comisión de los delitos establecidos en este Capítulo o delitos similares establecidos en las leyes del Estado Libre Asociado de Puerto Rico o de Estados Unidos contra la persona de su cónyuge, ex cónyuge, persona con quien cohabita o haya cohabitado, persona con quien sostiene o haya sostenido una relación consensual, o persona con quien haya procreado un hijo o una hija.

(b) Se trate de una persona que no haya violado una orden de protección expedida por cualquier tribunal al amparo de este Capítulo o de cualquier disposición legal similar.

(c) Se suscriba a un convenio entre el Ministerio Fiscal, el acusado y la agencia, organismo, institución pública o privada a que se referirá el acusado.

El tribunal tomará en consideración la opinión de la víctima sobre si se le debe conceder o no este beneficio e impondrá los términos y condiciones que estime razonables y el período de duración de la libertad a prueba que tenga a bien requerir, previo acuerdo con la entidad que prestará los servicios, cuyo término nunca será menor de un (1) año, ni mayor de tres (3).

Si la persona beneficiada con la libertad a prueba que establece esta sección incumpliere con las condiciones de la misma, el tribunal previo celebración de vista podrá dejar sin efecto la libertad a prueba y procederá a dictar sentencia.

Si la persona beneficiada por la libertad a prueba que establece esta sección no viola ninguna de las condiciones de la misma, el tribunal, previa recomendación del personal competente a cargo del programa al que fuere referido el acusado, en el ejercicio de su discreción y previa celebración de vista, podrá sobreseer el caso en su contra.

El sobreseimiento bajo esta sección se llevará a cabo sin pronunciamiento de sentencia por el tribunal, pero se conservará el expediente del caso en el tribunal, con carácter confidencial, no accesible al público y separado de otros récords a los fines exclusivos de ser utilizado por los tribunales al determinar, en procesos subsiguientes, si la persona cualifica para acogerse a los beneficios de esta sección.

El sobreseimiento del caso no se considerará como una convicción a los fines de las descualificaciones o incapacidades impuestas por ley a los convictos por la comisión de algún delito, y la persona exonerada tendrá derecho, luego de sobreseído el caso, a que el Superintendente de la Policía de Puerto Rico le devuelva cualquier expediente de huellas digitales y

---

[6] 8 L.P.R.A. sec. 636.

fotografías que obren en poder de la Policía de Puerto Rico tomadas en relación con la violación de los delitos que dieron lugar a la acusación.

El sobreseimiento de que trata esta sección sólo podrá concederse en una ocasión a cualquier persona.

En el presente caso, el 22 de abril de 1996, el Tribunal de Primera Instancia emitió la resolución correspondiente, en la que suspendió los procedimientos y remitió al aquí recurrido al programa de desvío, sujeto a ciertas condiciones que, cumplidas éstas, daría lugar a su exoneración por sobreseimiento de los cargos. Esta suspensión de los procedimientos dispuesta por el Tribunal de Primera Instancia parte de la premisa, como cuestión de hecho, de la ausencia de un fallo de culpabilidad y de que no se declaró convicto al aquí recurrido de los cargos por los que fue acusado.[7]

Sin embargo, el aquí recurrido incumplió las condiciones impuestas en la referida resolución. Posteriormente, el 10 de noviembre de 1997, el Ministerio Público presentó nueva acusación por maltrato agravado bajo el Art. 3.2 de la Ley de Violencia Doméstica.[8]

¿Debió haber sido declarado culpable y convicto del cargo por el que fue acusado[9] el aquí recurrido para cualificar al programa de desvío contemplado por el Art. 3.6 de la Ley de Violencia Doméstica, supra, antes de ser referido al mismo? La contestación es en la negativa. Veamos.

Para esbozar el fundamento que sostiene la conclusión anterior, es preciso auscultar, averiguar y determinar cuál fue la intención legislativa al aprobar dicho estatuto. Es nuestro ministerio el descubrir y hacer cumplir la verdadera intención y deseo de la Asamblea Legislativa al aprobar el mismo. Para ello, es de gran ayuda lo discutido en el seno de la comisión que la estudió y las discusiones en el hemiciclo. Los informes de las comisiones y los debates en el hemiciclo, en adición al texto de la ley, son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo.[10] La función

---

[7] Apéndice I del recurso de *Certiorari*, pág. 1.

[8] 8 L.P.R.A. sec. 632.

[9] Art. 3.2 de la Ley de Violencia Doméstica, supra.

[10] Pueblo v. Figueroa, 77 D.P.R. 188, 196 (1954); Pueblo v. Miranda, 79 D.P.R. 710, 713-714 (1956); López v. Muñoz, Gobernador, 81 D.P.R. 337, 350 (1959); Ramos Cobián v. Srio. de Hacienda, 79 D.P.R. 250, 260-261 (1956); Downs v. Porrata, Fiscal, 76 D.P.R: 611, 614 (1954); Pueblo v. Tribunal Superior, 75 D.P.R. 535, 548 (1953); Coop. Cafeteros v. La Capital, 82 D.P.R. 51, 58 (1961); Dávila v. Tribunal Superior, 93 D.P.R. 776, 779 (1966); Municipio de San Lorenzo v. Tribunal Superior, 86 D.P.R. 205, 209 (1962); Fratallone Di Gangi v. Tribunal Superior, 94 D.P.R. 104, 111 (1967); Amer. Babtist Home Mis. Soc. v. Registrador, 94 D.P.R. 43, 47-48 (1967); Srio. del Trabajo v. Asoc. De Señoras Damas, 94 D.P.R. 137, 146 (1967); Pueblo v. Tribunal Superior, 86 D.P.R. 834, 846-847 (1962); Robledo, Alcalde v. C.V.Q.M., 95 D.P.R. 1, 7-8 (1967); Srio. de Justicia v. Tribunal Superior, 95 D.P.R. 158, 161-163 (1967); García Gómez v. Comisión Industrial, 87 D.P.R. 554, 556 (1963).

de los tribunales es interpretar la ley, sin juzgar su bondad o sabiduría.[11] Los tribunales debemos armonizar, hasta donde sea posible, todas las disposiciones de ley envueltas en el caso con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador.[12]

Aunque la interpretación es arte y no ciencia, el más destacado y fundamental resorte de la interpretación racional es el elemento teleológico derivado de la ley. El análisis de los motivos y finalidad de la norma jurídica supone una delicada y compleja apreciación de intereses prácticos y de ideales éticos y culturales. Es nuestro deber poner en vigor con lealtad escrupulosa las normas contenidas en las leyes, cumpliendo a cabalidad los fines que en forma clara e inteligible trazan los preceptos de la ley. Sobre dicho tema, expresó este Tribunal en Figueroa v. Díaz[13] que "[l]o que está en el espíritu de un estatuto está en el estatuto, aunque no está en su letra; y lo que está en su letra no está en el estatuto, a menos que esté en su intención".

Al abordar un problema de interpretación, los jueces debemos ser cautelosos de no impartirle énfasis exclusivo o improcedente a un criterio, sino que debemos situarnos en el cuadro total de las circunstancias que nos permitan determinar la intención legislativa.[14] En el proceso de encontrar el significado de una ley que logre los propósitos del legislador, la interpretación judicial debe hacerse con fines socialmente útiles.

Los tribunales, generalmente, podemos rechazar una interpretación exactamente literal que conduzca a consecuencias irrazonables. La literalidad puede ser ignorada por los tribunales sólo cuando ella es claramente contraria a la verdadera intención o propósito legislativo, según tal propósito o intención puede surgir de la totalidad del estatuto o de la sección envuelta.[15]

Corresponde a los tribunales resolver las contradicciones en el propio estatuto, a base de la intención auténtica del legislador. Ese propósito no debe ser el del juez, sino el del legislador, según surja del estatuto en sí. El juez es un interprete y no un creador.[16] La función de la interpretación judicial para negar eficacia a un precepto se extiende hasta el punto de sustituir o eliminar judicialmente alguna disposición estatutaria que derrote el propósito de la ley.[17] Todo conflicto entre disposiciones de un mismo estatuto debe

---

[11] Famanina v. Corp. Azucarera de P.R., 113 D.P.R. 654 (1982).

[12] Andino v. Fajardo Sugar Co., 82 D.P.R. 85, 94 (1961); García Comercial v. Secretario de Hacienda, 80 D.P.R. 765, 774-775 (1958).

[13] 75 D.P.R. 163, 175-176 (1953).

[14] Marrero Cabreras v. Caribbean Refining Co., 93 D.P.R. 250, 269 (1966).

[15] Clínica Juliá v. Srio. de Hacienda, 76 D.P.R. 509, 520-522 (1954).
[16] Comunidad Fajardo v. Tribunal de Contribuciones, 73 D.P.R. 543 (1952).

[17] Rocafort v. Alvarez, 112 D.P.R. 563, 571 (1982); Rivera Cabrera v. Registrador, 113 D.P.R. 661, 665 (1982).

resolverse a favor del propósito legislativo en su integridad, en armonía con el más eficaz cumplimiento y pleno efecto del mismo.  La obligación judicial fundamental en esos casos es la de imprimirle efectividad a la intención legislativa, aún hasta el punto de sustituir o eliminar alguna frase específica estatutaria que, con diáfana claridad, haya sido incorporada a un estatuto por inadvertencia o error, hasta el punto de que esa frase derrote obviamente la intención legislativa que surge de la totalidad de la ley.[18]

El Art. 3.6 de la Ley de Violencia Doméstica, _supra_, hace referencia a la previa convicción del acusado para que el Tribunal de Primera Instancia pueda considerar el mecanismo del desvío.  Sobre este particular, dispone el estatuto que: "[u]na vez celebrado el juicio y _convicto que fuere_..." (Énfasis nuestro.)  Más adelante dispone: "[e]l tribunal podrá, motu proprio o mediante solicitud del Ministerio Fiscal o de la defensa, suspender todo procedimiento y someter a la _persona convicta_ a libertad a prueba, sujeto a que ésta participe en un programa de reeducación y readiestramiento para personas que incurren en conducta maltratante en la relación de pareja".  (Subrayado nuestro.)

Por otro lado, el mismo artículo contempla el sobreseimiento de los cargos criminales formulados contra el ya convicto a discreción del Tribunal de Primera Instancia, previa celebración de vista, de éste cumplir con las condiciones impuestas para beneficiarse de la libertad a prueba.  Sin embargo, el estatuto dispone textualmente que "[e]l sobreseimiento del caso **no se considerará como una convicción** a los fines de las descualificaciones o incapacidades impuestas por ley a los convictos por la comisión de algún delito...".  (Énfasis nuestro.)  No hay duda alguna, de que existe conflicto entre disposiciones del propio estatuto.

¿Cómo podría el Tribunal de Primera Instancia emitir fallo de culpabilidad sobre un acusado y declararlo convicto de un delito y posteriormente exonerarlo por sobreseimiento de tales cargos, por haber cumplido con las condiciones de la libertad a prueba, por lo menos un (1) año después de tal pronunciamiento, cuando ya fue declarado _culpable y convicto_ por el mismo, sin entrar en un conflicto conceptual al así hacerlo? Por existir tal conflicto en la redacción del mencionado estatuto, nos vemos obligados a iniciar el esfuerzo de tratar de conciliarlo con el propósito y razón de ser del mismo.  El referido estatuto persigue el fin de la rehabilitación de la persona acusada a través del cumplimiento de las condiciones impuestas en la libertad a prueba concedida y su reintegración a la sociedad, exonerado de los cargos por los cuales fue acusado mediante el sobreseimiento de los mismos.

Surge del Diario de Sesiones, que durante los trabajos en el hemiciclo del Senado acaecidos el 26 de junio de 1989, el honorable Enrique Rodríguez Negrón, entonces Senador de la Minoría, propuso al cuerpo unas enmiendas al entonces proyecto de ley que fueron

---

[18] _Concora Marina, Inc. v. Srio. de Hacienda_, 114 D.P.R. 248, 258 (1983).

aprobadas, hoy estatuto ante nuestra consideración.  Para una mejor ilustración de tales

eventos, procedemos a citar textualmente del Diario de Sesiones[19] directamente:

> SR. RODRÍGUEZ NEGRÓN: Señor Presidente.
>
> SR. VICEPRESIDENTE: En estos momentos está ante la consideración del Cuerpo, el Sustitutivo, según ha sido enmendado.
>
> SR. RODRÍGUEZ NEGRÓN: Señor Presidente.
>
> SR. VICEPRESIDENTE: Compañero senador, Rodríguez Negrón.
>
> SR. RODRÍGUEZ NEGRÓN: Para unas enmiendas, más bien, de estilo.
>
> SR. VICEPRESIDENTE: Adelante.
>
> SR. RODRÍGUEZ NEGRÓN: Y es en la página 15, en la línea 21, después de "una vez celebrado el juicio" que se intercale "y convicto que fuere".  Y, entonces, la otra es en la página 24, en la línea 24, en esa misma página 15, para que se sustituya la palabra "acusada" como "convicta" para que lea, "suspender todo procedimiento y someter a la persona convicta" no acusada.
>
> SR. VICEPRESIDENTE: ¿Alguna objeción a las enmiendas?
>
> SR. RIGAU: No hay objeción.
>
> SR. VICEPRESIDENTE: No habiendo objeción, aprobadas las enmiendas.
>
> SR. RODRÍGUEZ NEGRÓN: Y posteriormente consumiremos un turno.

Sin embargo, del récord legislativo surge claramente el propósito de la Asamblea

Legislativa de que tal estatuto[20] promoviera la creación de programas de desvío con un

enfoque conceptual y una filosofía psico-educacional dirigida a la reeducación y

readiestramiento de las personas acusadas de determinados delitos tipificados en la Ley

de Violencia Doméstica, _supra_, que tuvieran la intención sincera de rehabilitarse y que

demostraren su arrepentimiento ante la comisión del delito.  Tal propósito es cónsono con

el reconocimiento de la Asamblea Legislativa del problema social que representan tales casos

y el perjuicio que los actos y actitudes que contempla su tipificación ocasionan a la víctima

del maltrato físico y sicológico, así como al principio de la familia como pilar de nuestra

sociedad y a su necesario desarrollo a la altura de la época en que vivimos.

Concluimos, que a través de la Ley de Violencia Doméstica, _supra_, nuestra Legislatura

pretendió formular la política pública del Gobierno para lidiar con un problema social que

presenta unas dificultades para nuestro crecimiento y desarrollo al nivel individual y

colectivo.  La apreciación de los intereses prácticos que recoge tal estatuto, y de los

ideales éticos y culturales que la inspiraron, es el norte por el cual entendemos, muy

respetuosamente, que este Tribunal tiene que guiarse.  La realidad presente de nuestra vida

es que ese componente cultural tiene que ser sujeto de cambios fundamentales dirigidos por

profundos ideales éticos y morales sobre el comportamiento individual y colectivo del ser

humano.

Sobre los tribunales descansa su interpretación, poniendo en vigor con lealtad

escrupulosa los fines y propósitos que trazan los preceptos del estatuto.  Su espíritu reside

---

[19] Diario de Sesiones, 26 de junio de 1989, núm. 68.

[20] Art. 3.6 de la Ley de Violencia Doméstica, _supra_.

en la clara intención del legislador de conceder al acusado de este tipo de delito la oportunidad de rehabilitarse, obteniendo como resultado final su exoneración, dándole vigencia presente a los valores éticos y morales que la formulación de la política pública persigue.  Para ello, es ineludible el ejercicio de hermenéutica que aquí emprendemos buscando el espíritu de tal estatuto, aunque no esté en su letra escrita.

En síntesis, concluimos que no puede haber fallo de culpabilidad y pronunciamiento sobre convicción del acusado de parte del Tribunal de Primera Instancia, como paso previo para referir a una persona acusada del tipo de delito en cuestión al programa de desvío contemplado, sin actuar claramente en forma contraria al propósito de este estatuto. Lo contrario sería derrotar la intención legislativa y el propósito eminentemente rehabilitador que emana del Art. 3.6 de la Ley de Violencia Doméstica, supra.

## II

Aclarado lo anterior, nos corresponde ahora determinar si el aquí recurrido es acreedor al beneficio de sentencia suspendida, bajo las circunstancias particulares del caso de autos.  La contestación es en la negativa.  Veamos.

La Ley de Sentencias Suspendidas[21] dispone al respecto lo siguiente:

(a) El Tribunal de Primera Instancia podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menor de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, infracción a las secs. 415, 416a del Título 25 en su modalidad de delito grave y secs. 418 y 420 del Título 25 conocidas como la "Ley de Armas de Puerto Rico", o cualquier violación a las secs. 561 et seq. del Título 25 conocidas como la "Ley de Explosivos de Puerto Rico", que constituya delito grave y cualquier delito grave que surja como consecuencia de la posesión o uso ilegal de explosivos o sustancias que puedan utilizarse para fabricar explosivos o detonadores, artefactos o mecanismos prohibidos por las referidas secs. 561 et seq del Título 25, o cuando la persona utilice o intente utilizar un arma de fuego en la comisión de un delito grave o su tentativa y podrá asimismo suspender los efectos de la sentencia que hubiere dictado en todo caso de delito menos grave que surja de los mismos hechos o de la misma transacción que hubiere dado lugar, además, a sentencia por delito grave que no fuere de los excluidos de los beneficios de este capítulo, incluyendo el caso en que la persona haya sido declarada no culpable en dicho delito grave o rebajado dicho delito grave a delito menos grave y así convicta y ordenará que la persona sentenciada quede en libertad a prueba siempre que al tiempo de imponer dicha sentencia, concurran todos los requisitos que a continuación se enumeran:

(1)    Que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fuere procesada y a la cual no se hubieren suspendido los efectos de una sentencia anterior por delito grave;

(2)    que las circunstancias en que se cometió el delito no evidencien que existe en el autor del mismo un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico;

(3)    que el juez sentenciador tenga ante sí un informe que le haya sido rendido por el Administrador de Corrección después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada y que, del contenido de ese informe, pueda dicho juez sentenciador concluir que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad.  La corte sentenciadora podrá, a su discreción, además de poner a prueba a la persona sentenciada, imponer una multa cuya cuantía quedara a

---

[21] 34 L.P.R.A. sec. 1027.

discreción del tribunal, disponiéndose, además, que la persona puesta a prueba podrá ser requerida para que, mientras estuviere en libertad a prueba, resarza a la parte perjudicada de los daños que le hubiere ocasionado o para que asuma la obligación de corregir el mal causado por su acto delictivo. Disponiéndose, además, que una vez puesta a prueba, la persona quedará bajo la custodia legal del tribunal hasta la expiración del período fijado en su sentencia y;

(4)    que, en los casos en que se tiene la obligación de pagar una pensión alimentaria, dicha persona haya cumplido con su obligación de hacer los pagos o esté acogido a un plan de pagos y esté cumpliendo con el mismo.

(b) En los casos de delitos menos graves que no surjan de los mismos hechos o de la misma transacción que dio lugar a un delito grave, el Tribunal de Primera Instancia podrá, asimismo, suspender los efectos de la sentencia cuando la misma sea de reclusión únicamente y ordenará que la persona sentenciada quede en libertad a prueba siempre que, al tiempo de imponer dicha sentencia, concurran todos los requisitos que a continuación se enumeran:

(1)    Que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fuere procesada y a la cual no hubieren suspendido los efectos de una sentencia anterior por delito grave;

(2)    que las circunstancias en que se cometió el delito no evidencien que existe en el autor del mismo un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico;

(3)    que el juez sentenciador tenga ante sí un informe que le haya sido rendido por el Administrador de Corrección después de este último haber practicado una investigación minuciosa de los antecedentes criminales e historial social de la persona sentenciada y que, del contenido de este informe, pueda dicho juez sentenciador concluir que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad;

(4)    que, en los casos en que se tiene la obligación de pagar una pensión alimentaria, dicha persona haya cumplido con su obligación de hacer los pagos o esté acogido a un plan de pagos y esté cumpliendo con el mismo.

(c) Si el proceso por delito menos grave se ventilare en el Tribunal de Distrito, el tribunal sentenciador solicitará al Administrador de Corrección que le someta un informe que refleje los antecedentes criminales e historial social de la persona sentenciada. Con anterioridad a la fecha de la vista para determinar si se concede o no la libertad a prueba, el Tribunal de Distrito notificará al ministerio público de la Sala correspondiente del Tribunal de Primera Instancia, quien podrá comparecer a dicha vista a exponer sus objeciones a la concesión del privilegio. Una vez concedida la libertad a prueba, la persona quedará bajo la custodia legal del tribunal hasta la expiración del período fijado en su sentencia.

Con arregla [sic] a lo anteriormente dispuesto, el tribunal sentenciador podrá también suspender los efectos de la sentencia de cárcel que se hubiere dictado en todo caso de homicidio involuntario que no hubiere sido ocasionado mientras se conducía un vehículo en estado de embriaguez.

El Tribunal sentenciador no podrá suspender los efectos de una sentencia dictada contra toda persona, un funcionario o empleado público por violación a las secs. 4360 a 4364 del Título 33, ni por los delitos de apropiación ilegal agravada de bienes o fondos públicos, inciso (a) de la sec. 4272 del Título 33, o conspiración, sec. 4523 del propio título, ni por los delitos contra fondos públicos, sec. 4391 de dicho título, en relación con violación a cualesquiera de los antes mencionados en este párrafo, según tipificados en las secs. 3001 et seq. del Título 33.

El Tribunal de Primera Instancia tendrá jurisdicción original para entender en los casos de delitos graves y delitos menos graves que surjan de los mismos hechos o de la misma transacción, según se dispone anteriormente.

No habiendo sido declarado culpable y convicto[22] el aquí recurrido por el delito grave para el que previamente había sido acusado bajo la Ley de Violencia Doméstica, supra, por el Tribunal de Primera Instancia, ni mucho menos sentenciado y recluido en prisión, podía ser referido al oficial probatorio para la correspondiente investigación e informe. No

existe impedimento legal para ello.  Sobre este particular descansa fundamentalmente la diferencia de criterio entre esta ponencia y la opinión mayoritaria.

En el día de hoy este Tribunal resuelve, que una persona que comete una infracción a la Ley Núm. 54, _supra_, o que cometiere delitos relacionados a dicha ley mientras disfruta del privilegio de un programa de desvío bajo la misma, no podrá disfrutar del beneficio de una sentencia suspendida, bajo la Ley de Sentencias Suspendidas, _supra_, por haber sido convicto en un caso bajo la referida ley.  Respetuosamente, entendemos que se le está añadiendo a este último estatuto una exclusión adicional del beneficio que no contempló el legislador.  La Legislatura contempló excluir del beneficio a una persona que "... [n]o hubiese sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fuere procesada; y a la cual no se le hubieren suspendido los efectos de una sentencia anterior por delito grave".  (Énfasis nuestro.)

La determinación sobre si las circunstancias en que se cometió el segundo delito grave evidencian un problema de conducta o de carácter, para cuya solución favorable se requeriría la reclusión del aquí recurrido, es un asunto a considerarse por el Tribunal de Primera Instancia bajo su sana discreción.

La vista de revocación de los beneficios del sistema de desvío se fijó para el 23 de enero de 1998.  El Tribunal de Primera Instancia dejó en suspenso la revocación del beneficio concedido al aquí recurrido de desvío bajo el Artículo 3.6 de la Ley de Violencia Doméstica, _supra_, y fue referido al oficial probatorio para que rindiera un informe "con miras a determinar si cualifica para una sentencia suspendida".  El 10 de febrero de 1998, el Tribunal de Primera Instancia dictó sentencia en ambos casos y le concedió los beneficios de una sentencia suspendida, sujeto a que el aquí recurrido continuara residiendo en el Hogar Nueva Cosecha.[23]

Concluimos, que el Tribunal de Primera Instancia abusó de su discreción al conceder los beneficios de sentencia suspendida al aquí recurrido.  Tal persona ha evidenciado un patrón recurrente de conducta y de carácter maltratante para con sus compañeras.  Tal conducta le impone el deber a los tribunales, como interés apremiante, de proteger a la comunidad.  Para ello, se requiere la reclusión del aquí recurrido en alguna de las instituciones penales de Puerto Rico, pues resulta evidente que el medio de permanecer bajo un programa de desvío, cuyo propósito especial es lidiar con la rehabilitación de este tipo de personas, no fue posible, dada su falta de voluntad de abandonar tal conducta.  No se va a lograr tal propósito rehabilitador en la libre comunidad con sujetarlo, como condición especial, a un programa de tratamiento de alcoholismo.  Este caso requiere de medidas

---

[22] Véase nota al calce núm. 2.

[23] Apéndice II, pág.3, y Apéndice III, pág. 4, del recurso de _Certiorari._

dirigidas a la protección del interés comunitario y a la rehabilitación del aquí recurrido a través de los medios y recursos de algunas de las instituciones penales de Puerto Rico.

Por lo anteriormente expuesto, muy respetuosamente, concurrimos con el resultado de la opinión mayoritaria.


                              Efraín E. Rivera Pérez
                                 Juez Asociado