Arbona Lago, Juez Ponente
*1169 TEXTO COMPLETO DE LA SENTENCIA
Hechos
Entre los aquí litigantes se suscitó litigio en cuanto a la forma y manera adecuada en ley para proceder a tasar cierta propiedad de la recurrida CCPR Services, Inc. (CCPR) descrita como “...planta externa y oficina central...” para varios años fiscales. Como resultado, CCPR solicitó reintegro al Centro de Recaudación De Ingresos Municipales (CRIM) en cada instancia.
Para tales casos de conflicto entre el CRIM y el contribuyente, la ley dispuso como sigue:

“§5098a. Revisión administrativa e impugnación judicial de la contribución sobre la propiedad inmueble.

(a) Revisión administrativa. - Si el contribuyente no estuviere conforme con la notificación de la imposición contributiva emitida por el Centro de conformidad con las sees. 5076 y 5077 de este título, podrá solicitar por escrito una revisión administrativa donde se expresen las razones para su objeción, la cantidad que estime correcta e incluir, si lo entiende necesario, la evidencia o documentos correspondientes, dentro del término de treinta (30) días calendarios, a partir de la fecha de depósito en el correo de la notificación provista por las sees. 5076 y 5077 de este título, siempre y cuando el contribuyente, dentro del citado término:

(1) Pague al Centro de Recaudación la parte de la contribución con la cual estuviere conforme y un cuarenta por ciento (40%) de la parte de la contribución con la cual no estuviere conforme, o

(2) pague al Centro de Recaudación la totalidad de la contribución impuesta.

El contribuyente que solicite una revisión administrativa, según se dispone en esta sección, no podrá acogerse al descuento por pronto pago dispuesto en la see. 5093 de este título, excepto cuando pague la totalidad de la contribución impuesta dentro de los términos prescritos por ley para tener derecho al descuento.

El Centro deberá emitir su decisión dentro de un término de sesenta (60) días a partir de. la fecha de radicación de la solicitud de revisión administrativa por el contribuyente. Cuando el Centro no conteste dentro de ese término, se entenderá que ratifica el estimado de contribuciones notificado al contribuyente. Cuándo la decisión del Centro fuera adversa al contribuyente, el contribuyente vendrá obligado a pagar la parte de la contribución pendiente de pago, con los intereses y recargos correspondientes, computados desde la fecha en que se notificó la decisión. Cuando la decisión sea favorable, el Centro vendrá obligado a devolver al contribuyente la parte de la contribución cobrada en exceso, con los intereses correspondientes desde la fecha de pago de la contribución revisada.

El procedimiento de revisión administrativa deberá completarse como requisito previo para que un contribuyente que. no estuviere conforme con la decisión sobre imposición contributiva la impugne, según lo dispone el inciso (b) de esta sección.

*1170
(b) Impugnación judicial, - Si el contribuyente no estuviere conforme con la notificación de la imposición contributiva realizada por el Centro, de conformidad a las sees. 5076 y 5077 de este título y el inciso (a) de esta sección, podrá impugnar la misma ante el Tribunal de Primera Instancia dentro del término de treinta (30) días calendarios, a partir de la fecha de depósito en el correo de la notificación provista por las sees. 5076 y 5077 de este título, siempre y cuando dicho contribuyente, dentro del citado término:

(1) Pague al Centro de Recaudación la parte de la contribución con la cual estuviere conforme y cuarenta por ciento (40%) de la parte de la contribución con la cual no estuviere conforme, o

(2) pague al Centro de Recaudación la totalidad de la contribución impuesta.

Tanto la presentación de la impugnación, como el pago de la contribución impuesta, ya sea en su totalidad o en la parte con la cual se estuviere conforme, así como el pago del cuarenta por ciento (40%) de la parte de la contribución con la cual no se estuviere conforme, dentro del término dispuesto, se considerarán de carácter jurisdiccional.

Si la decisión del Tribunal de Primera Instancia fuera adversa al contribuyente, dicha decisión dispondrá que la contribución impugnada, o la parte de ella que se estimare como correctamente impuesta, sea pagada con los intereses y recargos correspondientes desde la fecha en que se notificó la sentencia. Si la decisión del tribunal fuere favorable al contribuyente y éste hubiere pagado la contribución impugnada en■ o con posterioridad a lo establecido en esta sección, dicha decisión dispondrá que se devuelva a dicho contribuyente la contribución o la parte de ella que estimare el tribunal fue cobrada en exceso, con los intereses correspondientes por ley, computados desde la fecha de pago de la contribución impugnada.

El contribuyente que desee impugnar la imposición contributiva, según se dispone en esta sección, no podrá acogerse al descuento por pronto pago dispuesto en la see. 5093 de este título, excepto que pague la totalidad de la contribución impuesta e impugnada dentro de los términos prescritos por ley para tener derecho al descuento. - Agosto 30, 1991, Niun. 83, adicionado como Art. 3.48 en Julio 17, 1998, Núm. ¡35, see. 2. ”

Dentro de tal contexto legal, CCPR recurre ante el foro judicial de una determinación del CRIM que le es adversa y en cuanto a lo que aquí nos concierne, en la demanda del 7 de agosto de 2002; DAC2002-2812 (501), expuso como sigue:

“13. A pesar de que el Artículo 3.48 de la Ley dispone que el procedimiento de revisión administrativa deberá de completarse como requisito previo para que Services impugne la imposición judicialmente, Services presenta la impugnación judicial de autos, ya que dicho Artículo 3.48 requiere a su vez que la impugnación judicial se haga dentro del término de treinta (30) días calendarios a partir de la fecha en el correo de la notificación de la Imposición.

14. Contrario a la disposición de la Ley, la imposición no se notificó por correo, si no por facsímil el 8 de julio de 2002. No obstante, y para evitar cualquier alegación de renuncia, prescripción o impedimento, Services impugna la imposición judicialmente conforme al Artículo 3.48 y solicita que se declare que la base utilizada por el CRIM para tasar la propiedad inmueble de Services no se determinó a base de canales de voz instalados y, en su consecuencia, el CRIM le reembolse a Services la cantidadJLL, 008,036.48, con los intereses correspondientes por ley, computados desde el 31 de julio de 2002. ” (Ap. Pág. 3).
Mediante “Moción de Desestimación Por Falta de Jurisdicción Por Prematuridad", el 21 de mayo de 2007, complementando una previa moción para desestimar del 16 de diciembre de 2003, el CRIM solicitó ante el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), en las causas consolidadas KC02003-0008 y KC02003-00024, la desestimación por tratarse de un recurso prematuro a la fecha de su presentación.
*1171 CCPR se opuso a tal solicitud y mediante Resolución del 20 de noviembre de 2007, el TPI la declaró Sin Lugar, señalando lo siguiente:
7.7
Si bien una lectura integral de ambas disposiciones parece indicar que hay que agotar el remedio administrativo antes de acudir al Tribunal, no podemos perder de vista que el contribuyente siguió la letra de la Ley al contar los 30 días para acudir al Tribunal desde la "la notificación provista por las sees. 5076 y 5077 de este título...”. No existiendo una interpretación de nuestro Honorable Tribunal Supremo resolviendo este conflicto, no podemos penalizar al contribuyente con el drástico remedio de la desestimación cuando su intención clara y evidente era cumplir con la ley y hacer valer su derecho a revisión judicial. [.]”. (Ap. pág. 213)
De ello recurre el CRIM en la causa del epígrafe, e imputa al TPI incidir de la siguiente forma:

“Primer Error: Erró el TPI al no determinar expresamente que el término de treinta días para acudir al tribunal para impugnar la contribución impuesta se cuenta a partir de la fecha en que se completó el procedimiento administrativo de conformidad con el Artículo 3.48 de Ley de Contribuciones Municipales sobre la Propiedad, 21 L.P.R.A. § 5098a.

Segundo Error: Erró el TPI al determinar que tiene jurisdicción porque habría que aplicar en forma prospectiva una decisión interpretando la ley en el sentido de que el Contribuyente acudió al tribunal prematuramente, para evitar “el drástico remedio de la desestimación”, en vista de que la ley ha sido redactada en forma “defectuosa ”, en que el Tribunal Supremo aún no ha interpretado la ley, y en que la “intención clara y evidente (del contribuyente” era cumplir con la ley y hacer valer su derecho a revisión judicial”. [.]
El 20 de febrero de 2008, CCPR compareció en autos exponiendo su posición. El asunto está sometido.
Exposición y Análisis
El CRIM expone sucintamente su posición de la siguiente forma:
7.7

El conflicto lo propicia el hecho de que el plazo que le da el Artículo 3.48 (b) al contribuyente para presentar la demanda de impugnación judicial resulta ser el mismo plazo que le da el Artículo 3.48 (a) para solicitar la revisión administrativa. En ambos casos, tanto en el inciso (a) como en el inciso (b) del Artículo 3.48 de la Ley, se dispone que el término correspondiente de 30 días se cuenta “a partir de la fecha de depósito en el correo de la notificación provista por las sees. 5076 y 5077”, o sea, la fecha en que el CRIM le notificó al contribuyente la imposición de la contribución. Ambos plazos, por lo tanto, corren paralelamente.

Esto significa que si hay que acudir al tribunal dentro de los mismos 30 días que se presenta la solicitud de revisión administrativa ante el CRIM, los procedimientos administrativos no se habrán completado cuando se acuda al tribunal. Es altamente improbable, sino imposible, que el procedimiento administrativo se complete en treinta días, si, como se ha visto, el CRIM, por ley, tiene sesenta días para resolver la solicitud de revisión administrativa. A la inversa, si se espera a que se haya completado el procedimiento administrativo para acudir al tribunal, cumpliendo con el primer requisito, es imposible hacerlo dentro de los treinta días de notificada la contribución.

*1172 La jurisprudencia es clara en el sentido de que, cuando hay un conflicto entre las disposiciones de un estatuto, como sucede en este caso, es menester interpretar el estatuto en su conjunto, en armonía “con el más eficaz cumplimiento y pleno efecto del mismo”, de forma, tal “de imprimirle efectividad a la intención legislativa, aun hasta el punto de sustituir o eliminar alguna frase específica estatutaria que, con diáfana claridad, haya sido incorporada a un estatuto por inadvertencia o error, hasta el punto de que esa frase derrote obviamente la intención legislativa que surge de la totalidad de la ley.” [El Pueblo de Puerto Rico v. Rodríguez Velázquez, 152 D.P.R. 192, 212-213 (2000)]. Además, hay que descartar la interpretación literal de una ley que produzca un resultado absurdo y adoptar aquélla que logre un resultado armónico, de suerte tal que haya correspondencia entre las distintas disposiciones de la ley, tomado en cuenta su espíritu y la razón.2.

Es obvio que entre las disposiciones en conflicto, tiene mucha más importancia la exigencia de que se haya completado el procedimiento de revisión administrativa antes de poder presentar la impugnación judicial, que contar el término de 30 días para presentar la impugnación judicial a partir de la fecha en que el CRIM le notificó al contribuyente la imposición de la contribución en cuestión. Mediante dicho primer requisito, la ley incorpora la doctrina jurisprudencial del agotamiento de los procedimientos administrativos, que es un principio básico del derecho administrativo, a los efectos de que es menester agotar los procedimientos administrativos antes de acudir a los tribunales, cuando el organismo administrativo tiene jurisdicción sobre el asunto, como sucede en este caso. Entre otras cosas, la aplicación de dicha doctrina permite que el organismo administrativo (aquí el CRIM) creado por la legislatura para aplicar un estatuto (aquí la ley sobre las contribuciones sobre la propiedad), aplique su peritaje primero; y propicia la eficiencia pues no tiene sentido que se litigue a la vez la misma cosa en dos foros distintos, el administrativo y el judicial. (Veáse: Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Segunda edición, a la página 461.) Por lo tanto, tiene sentido que le ley le exija al contribuyente que ha solicitado una revisión administrativa de la contribución impuesta que se complete el procedimiento de revisión administrativa, que el propio contribuyente inició al solicitar la revisión administrativa de la contribución impuesta, como requisito previo a la presentación por el contribuyente de la impugnación judicial. No tiene sentido alguno contar el término de 30 días para presentar la impugnación judicial a partir de la fecha en que el CRIM le notificó al contribuyente la imposición de la contribución en cuestión a costa de prescindir con el cumplimiento de primer requisito.

Es obvio que la interpretación literal de la disposición de la ley, contando el término de 30 días para presentar la impugnación judicial a partir de la fecha en que CRIM le notificó al contribuyente la imposición de la contribución, que es el mismo plazo que la ley le da al contribuyente para solicitar revisión administrativa de la contribución impuesta, produce un resultado absurdo. Esa interpretación, sencillamente convierte en inconsecuente el procedimiento de revisión administrativa que contempla la propia ley. No es posible completar los procedimientos de revisión administrativa antes de acudir al tribunal si hay que acudir al tribunal dentro del mismo término en que debe radicarse la solicitud de revisión administrativa ante el CRIM. Ese resultado es absurdo, pues da al traste con la doctrina del agotamiento de los procedimientos administrativos. Tampoco tiene sentido que la ley le de al CRIM 60 días desde la presentación ante el CRIM de la solicitud de revisión administrativa presentada por el contribuyente para decidir la misma, si el contribuyente tiene sólo 30 días de notificada la contribución para presentar la impugnación judicial.

La única forma que tiene sentido la ley en este caso es interpretando el segundo requisito en el sentido de que el término de 30 días dispuesto para la presentación de la impugnación judicial se interrumpe hasta tanto se complete el procedimiento administrativo y se cuenta entonces a partir de la fecha en que se completó el procedimiento administrativo. De esa forma se resuelve el conflicto entre las disposiciones del Artículo 3.48 en forma armónica, pues posibilita el cumplimiento con el primer requisito, dándole pleno efecto al mismo, que es lo que demanda el espíritu de la ley y la razón. Esa es la única interpretación coherente que puede dársele a la ley. ” (Petición, págs. 13-15)
*1173 A todo ello, el CCPR expone como sigue:

“[...]CCPR se opuso a lo solicitado por el CRIM, por entender que no se le debía penalizar por actuar de conformidad con el mandato expreso del Art. 3.48 (b) de la Ley 83; es decir, presentar su reclamación judicial dentro del término de treinta días de ser notificado de la imposición contributiva en cuestión. [...]. ” (Oposición, pág. 2)

[...] de CCPR haber asumido la postura sugerida por el CRIM en su Petición de Certiorari, y haber esperado a que se completara el procedimiento de revisión administrativa para entonces radicar el recurso judicial, se hubiese expuesto igualmente a la desestimación del recurso, toda vez que el término de treinta días establecido en el Art. 3.48(b) es de carácter jurisdiccional.2 Es evidente, pues, que independientemente del curso de acción que tome el contribuyente, el CRIM siempre tendrá a su disposición cualquiera de las dos interpretaciones que más le convenga para solicitar la desestimación de la acción. El Honorable Tribunal no debe endosar una interpretación que colocaría a un contribuyente diligente (como lo ha sido CCPR) en una situación en la cual no puede prevalecer de modo alguno. Ciertamente, el así resolver es lo que constituiría un resultado absurdo, injusto e ilógico.

Por tanto, es ineludible concluir que CCPR cumplió fielmente con el mandato expreso de la Ley 83, el cual siendo en extremo diáfano, no admite interpretación en contrario por parte del contribuyente o por parte del CRIM. El hecho de que la Ley 83 contenga contradicciones, no es razón suficiente para dejar en manos del contribuyente la carga y la decisión de cómo se va a interpretar a aplicar la Ley 83, como sugiere el CRIM en su Petición. [...] (Oposición, págs. 6-7)

[■■■]

En síntesis, lo que el CRIM le solicita al Honorable Tribunal mediante esta Petición de Certiorari es que resuelva las inconsistencias del Art. 3.48 incorporando disposiciones que no vislumbra la letra clara de la ley, y resolviendo las dudas a favor del Gobierno. De aceptar dicha invitación, el Honorable Tribunal no solamente desacataría los principios rectores de hermenéutica contributiva, sino que ejercería su discreción y poder judicial para consagrar una injusticia, a saber, dejar desprovisto de remedios a un contribuyente que siguió fielmente el mandato de la Ley 83. Este es, pues, un curso de acción que este Tribunal debe evitar a toda costa. [...]”. (Oposición, pág. 7)
Tanto el CRIM como CCPR exponen clara y adecuadamente la contradicción procesal a que actualmente la ley expone a todo contribuyente.
Debemos comenzar por señalar que el argumento y análisis de hermenéutica expuesto por el CRIM, en cuanto cómo se debe armonizar la seria contradicción de ley, para lograr su propósito con relación al trámite de Revisión Administrativa y Revisión Judicial, es válido y convincente. Pero no es menos cierto que todo contribuyente se expone a un grave riesgo procesal y sustantivo, puesto que el asunto también se puede argumentar del modo contrario, como bien lo expone CCPR.
Precisamente, de no existir la ya señalada interpretación dual, no estaríamos ante una verdadera contradicción. Por otro lado, el hecho de que el planteamiento del CRIM nos merezca que en sus méritos debe prevalecer, no nos sirve para franquear la frontera de lo que es justo, como parte del requisito del debido proceso de ley, procesal y sustantivo. Se trata aquí de un importante aspecto del derecho apelativo dentro del trámite administrativo-judicial, por lo que tal contradicción no puede convertirse en una “trampa de arena”, capaz de derrotar un trámite de revisión judicial, pues ello equivale a aceptar que la ley no provee en este caso para la revisión judicial, lo cual activa el remedio jurisprudencial incito en Ortiz v. Alcaide Penitenciaria Estatal, 131 DPR 849, 859-860 (1992). El trámite de revisión judicial siempre se presume, salvo que *1174 claramente conste en la ley lo contrario.
Como se puede apreciar, conforme al texto de ley, podría argumentarse que el contribuyente perdió su derecho a revisar el dictamen administrativo,' tanto si pide reconsideración ante el foro administrativo, como si recurre directamente a este Tribunal.
Nunca debemos perder de vista que el ordenamiento procesal, administrativo como judicial, tienen como norte una misma meta de justicia, por lo que realmente se trata de un desarrollo paralelo. A tal respecto, se ha resuelto que:

“Las Reglas de Procedimiento Civil se inspiran armoniosamente en tres valores fundamentales de justicia, rapidez y economía, enmarcados en la norma de buena fe que debe permear la tramitación de toda causa de acción. Para que ello se logre, se requiere un enfoque integral, pragmático y creativo de nuestro ordenamiento procesal y sustantivo que con voluntad, sinceridad y acción, le de vida a dichos valores y los convierta en vivencias y realidades cotidianas, atendiendo así las altas expectativas de nuestro contorno social. ”

Neptune Packing Corp. v.Wackenhut Corp., 120 DPR 283, 288 (1988).
Para que ello se logre, es siempre menester utilizar un enfoque pragmático y muchas veces creativo, en todo el ordenamiento procesal para que insufle vida a dichos preceptos, con el fin de alcanzar la deseada meta social. Quiñones Román v. Cía. ABC, 152 DPR 367, 374, (2000); Neptune Packing Corp. v. Wackenhut Corp., SUPRA. Todas las reglas procesales, administrativas como judiciales persiguen viabilizar, facilitar y alcanzar el resultado justo, nunca obstaculizarlo. Valentín v. Mun. de Añasco, 145 DPR 887 (1998); Pueblo v. Miranda Santiago, 130 DP 507 (1992); Echevarría Jiménez v. Sucn. Pérez Meri, surpa; J.R.T. v. Aut. de Comunicaciones, 110 DPR 879 (1981).
Como norma de hermenéutica interpretativa debemos añadir que el formalismo sólo sirve para auxiliar en la búsqueda de la justicia y sin este anhelo como propósito pierde toda su razón y vigencia. El proceso administrativo como el judicial se justifica como facilitador de las relaciones humanas de convivencia, por lo que la ley aborrece los extremos, máxime cuando no sirven otro fin que el de salvaguardar el propio tecnicismo, en forma aislada. Quetglas v. Carazo, 134 DPR 644 (1993); Gorbea Valles v. Registrador, 133 DPR 308; Machado v. Barranco, 119 DPR 563 (1987); Ades v. Zalman, 115 DPR 514 (1984); Piovanetti v. Vivaldi, 80 DPR 108 (1957).
Cuando confrontamos un resultado no previsto por el genuino interés del ordenamiento procesal administrativo o judicial, la situación obliga a buscar el camino de mayor apertura, en el entendido de que así se sirve mejor el interés de la justicia.
Habida cuenta de que no somos tribunal con autoridad para establecer jurisprudencia, tampoco debemos acceder a la autorización de una interpretación con propósito prospectivo; aunque entendamos que ese sea el camino correcto para atender el asunto que aquí nos ocupa, dentro de la justicia del caso y propósito normativo. Nuestra jurisdicción no excede de la inmediatez de este litigio y expediente judicial, por lo que nuestro remedio necesariamente ha de ser conforme a tales limitaciones.
Entendemos, que ante los hechos que informa esta causa, se sirve mejor los fines de la justicia al confirmar el dictamen judicial aquí recurrido y ordenar la continuación del proceso hasta su disposición final. Al así resolver tomamos también en consideración que este litigio data del 2002, lleva 6 años en el calendario judicial y no es razonable tanta dilación para solventar un asunto de esta naturaleza. Es también de señalar que el ilustrado foro de instancia se encuentra amplia y cabalmente preparado para atender y resolver en los méritos el asunto. Ante todo ello, no resulta aconsejable recurrir a otro trámite, como lo sería revertir el asunto al CRIM, *1175 para nueva notificación o trámite en revisión administrativa.
Dictamen
Conforme a lo señalado, expedimos el auto de Certiorari solicitado y confirmamos la Resolución recurrida. Una vez la presente advenga firme y el mandato revierta al hermano foro de instancia, continuará el proceso, según señalado.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIO 2008 DTA 58
1. La demanda fue presentada en la Sala de Bayamón, por lo que fue trasladada al Tribunal de Primera Instancia, Sala de San Juan.