ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Apelado<br><br>v.<br><br>**JUAN LUIS DEL VALLE NEGRÓN**<br><br>Apelante | TA2025AP00450 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Guayama**<br><br>Criminal Núm.: **G LE2025G0118**<br><br>Sobre: Art. 3.3 de la Ley 54 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de febrero de 2026.

Comparece el señor Juan Luis Del Valle Negrón (Sr. Del Valle Negrón o apelante), mediante un recurso de *Apelación,* en el que nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia (TPI), Sala Superior de Guayama, el 15 de septiembre de 2025.[1] Mediante dicho dictamen, el foro primario condenó al Sr. Del Valle Negrón a una pena de tres (3) años de reclusión, al amparo del Artículo 3.3 de la *"Ley para la Prevención e Intervención con la Violencia Doméstica",* Ley Núm. 54 del 15 de agosto de 1989 (Ley Núm. 54-1989), según enmendada, 8 LPRA sec. 633, consecutiva con cualquier otra que estuviese cumpliendo. Además, concedió al Sr. Del Valle Negrón el beneficio de sentencia suspendida y libertad a prueba, y le impuso el pago de una pena especial.

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones, Entrada Núm. 12, Anejo 1.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El caso de marras tiene su génesis el 5 de mayo de 2025, cuando el Ministerio Público acusó al Sr. Del Valle Negrón por el delito grave de maltrato mediante amenaza, conforme al Artículo 3.3 de la Ley Núm. 54-1989, *supra,* sec. 633.[2] Específicamente, arguyó que, el 6 de abril de 2025, en Salinas, Puerto Rico, el Sr. Del Valle Negrón amenazó a la señora Sharon Cruz Pérez (Sra. Cruz Pérez), con quien sostuvo una relación consensual y procreó un hijo, "consistente en que le dijo que no se pusiera bruta porque se iba a joder y que él sabe a donde tiene que ir, que es al Cuartel General para que la jodan porque la Víctima es Agente de la policía de Puerto Rico".[3]

Tras múltiples trámites procesales, el foro primario celebró el Juicio en su Fondo el 1 de agosto de 2025, en el que testificó la Sra. Cruz Pérez, como testigo de cargo.[4] Luego de darse por sometido el caso, el TPI encontró al Sr. Del Valle Negrón culpable y ordenó a que se evaluara la posibilidad de un programa de desvío, al amparo del Artículo 3.6 de la Ley Núm. 54-1989, *supra,* sec. 636, para el beneficio de este.

Así, el 15 de septiembre de 2025, el TPI emitió la *Sentencia* apelada.

Inconforme, el Sr. Del Valle Negrón radicó una *Apelación* ante nos el 16 de octubre de 2025 y expuso los siguientes señalamientos de error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR AL APELANTE CULPABLE MÁS ALLÁ DE DUDA RAZONABLE POR INFRACCIÓN AL ART[Í]CULO 3.3 DE LA LEY DE PREVENCIÓN E INTERVENCIÓN DE VIOLENCIA DOMÉSTICA.**

---

[2] *Íd.*, Anejo 2.
[3] *Íd.*
[4] *Íd.*, Entrada Núm. 9, Anejo 1, págs. 1-3, 55-56.

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR AL APELANTE CULPABLE ANTE AUSENCIA DE PRUEBA PARA CONFIGURAR EL DELITO POR INFRACCIÓN DEL ARTICULO 3.3 DE LA LEY DE PREVENCIÓN E INTERVENCIÓN DE VIOLENCIA DOMÉSTICA.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR AL APELANTE CULPABLE DE UNA ACUSACIÓN QUE NO IMPUTABA DELITO POR INFRACCIÓN DEL ARTICULO 3.3 DE LA LEY DE PREVENCIÓN E INTERVENCIÓN DE VIOLENCIA DOMÉSTICA.**

Luego de darse por sometida la Transcripción de Prueba Oral sobre el juicio celebrado ante el TPI, el Sr. Del Valle Negrón presentó ante nos un *Alegato* donde reiteró los mismos planteamientos de error. En particular, adujo que, cuando la Sra. Cruz Pérez le mostró fotos sobre su alegada pareja, lo que procedía era lo que hizo; es decir, "advertirle [a la Sra. Cruz Pérez] de [las] consecuencias si hacia algo incorrecto e ilegal contra su pareja".[5]

Por su parte, El Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General de Puerto Rico, (El Pueblo) presentó un *Alegato de el Pueblo de Puerto Rico* el 6 de febrero de 2026. Arguyó que el Ministerio Público presentó prueba suficiente, por medio del testimonio de la Sra. Cruz Pérez, para la determinación condenatoria contra el Sr. Del Valle Negrón por el delito de maltrato mediante amenaza. Además, expuso que la acusación en cuestión notificó al Sr. Del Valle Negrón de todos los hechos esenciales del delito y le imputó el mismo. Por tal razón, El Pueblo solicitó que esta Curia confirmara la *Sentencia* apelada.

**II.**

**A.**

La Ley Núm. 54-1989, *supra*, reconoce que la violencia doméstica es "uno de los problemas más graves y complejos que confronta nuestra sociedad". Artículo 1.2 de la Ley Núm. 54-1989,

---

[5] *Íd.*, Entrada Núm. 9, pág. 12.

*supra*, sec. 601; *In re Santiago Concepción*, 189 DPR 378, 405-406 (2013). Precisamente, el propósito de la Ley Núm. 54-1989, *supra*, "es un corolario del interés apremiante del Estado de disuadir a sus miembros para que desistan de las agresiones perpetradas entre parejas y para modificar patrones de conducta nocivos que tan arraigados están en nuestro pueblo". *Pueblo v. Rodríguez Velázquez*, 152 DPR 192, 205 (2000). Ello se debe a que, como política pública, el Gobierno "repudia enérgicamente la violencia doméstica por ser contraria a los valores de paz, dignidad y respeto que este pueblo quiere mantener para los individuos, las familias y la comunidad en general". Ley Núm. 54-1989, *supra*, sec. 601; Artículo 1.2 de la Ley Núm. 54-1989, *supra*, 601. De hecho, "los niños que sufren de violencia doméstica o que provienen de hogares donde ocurren incidentes de violencia doméstica llevan consigo por toda la vida la huella y los patrones de la violencia". Ley Núm. 54-1989, *supra* (Exposición de Motivos). Por tanto, "como integrantes de la Rama Judicial, estamos comprometidos a contribuir a erradicar de nuestra sociedad este grave problema". *In re Santiago Concepción*, *supra*, pág. 406.

Ante lo anterior, la Asamblea Legislativa estableció, por medio de la Ley Núm. 54-1989, *supra*, una serie de medidas con el propósito de prevenir y combatir la violencia doméstica en Puerto Rico; y tipificó varios delitos incluyendo el maltrato y el maltrato mediante amenaza. Asimismo, bajo este estatuto los tribunales están facultados para expedir órdenes de protección para las víctimas de violencia doméstica; y se estableció un proceso fácil y expedito para el trámite y adjudicación de órdenes, entre otros asuntos.

Particularmente, el Artículo 3.3 de la Ley Núm. 54-1989, *supra*, sec. 633, tipifica el delito de maltrato mediante amenaza y expone lo siguiente:

Toda persona que amenazare con causarle daño a su cónyuge, ex cónyuge, a la persona con quien cohabita o con quien haya cohabitado o con quien sostiene o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, a los bienes apreciados por esta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro, o cuando se amenace con causar daño por maltrato a un animal o mascota incurrirá en delito grave de cuarto grado en su mitad superior. El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.

La amenaza también ocurrirá cuando se utilice cualquier tipo de comunicación electrónica o digital, mediante mensajes de texto, correo de voz[,] correos electrónicos o redes sociales, o cualquier medio digital.

(Énfasis suplido).

En otras palabras, por medio de esta disposición, se castiga el maltrato psíquico que se realiza a través de las amenazas. Aunque nuestro máximo foro reconoció que el concepto "amenaza" no está definido, "se utiliza con su acepción coloquial de dar a entender que se le quiere causar algún mal a alguien". *Pueblo v. Ayala García, supra,* págs. 213, 215. Las amenazas "más allá de ser indicadores de riesgo de violencia física y daño letal contra las víctimas" son "un elemento de persecución y desestabilización que requiere ser sancionado, aun cuando no se concrete el atentado anunciado". *Pueblo v. Ayala García,* 186 DPR 196, 209 (2012). Sin embargo, el delito de maltrato por medio de amenaza "no requiere un patrón de conducta ni un efecto sobre el ánimo de la víctima". *Pueblo v. Ayala García, supra,* págs. 214-215. Solamente se exige que se realice una amenaza de causar un daño determinado. *Pueblo v. Ayala García, supra,* pág. 215.

Ahora bien, tanto el delito de maltrato como el de maltrato mediante amenaza conllevan la misma pena, pues "el daño permanente y difícil de subsanar que produce el abuso psicológico, así como las implicaciones que tiene dentro de la relación de pareja

como factor para la perpetuación del ciclo de maltrato, instan a equiparar el abuso físico con la amenaza de llevarlo a cabo. Además, ambas conductas representan abuso emocional". *Pueblo v. Ayala García, supra,* pág. 211. Igualmente lo reconoció la Asamblea Legislativa al expresar " '[t]odos los delitos propuestos se han clasificado como graves, pues es importante que comuniquemos a los ofensores que su conducta es inaceptable y que no será tolerada' ". *Pueblo v. Ayala García, supra,* pág. 211 (*citando a* Memorial Explicativo, P. del S. 470 (P. de la C. 615) de 28 de abril de 1989, pág. 7). No obstante, una vez se celebra el juicio y el convicto fuere culpable o hubiese realizado una alegación de culpabilidad, el foro primario puede, *motu proprio* o a solicitud de la defensa o el Ministerio Público, suspender todo proceso y someter a la persona convicta a libertad bajo prueba. Artículo 3.6 de la Ley Núm. 54-1989, *supra,* sec. 636.

**B.**

Por otro lado, es mandato constitucional que toda persona acusada tiene el derecho de ser notificada de la naturaleza y la causa de la acusación. Art. II, Sec. 11, Const. P.R., LPRA, Tomo 1. Una acusación debe contener "[u]na exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común". Regla 35(c) de Procedimiento Criminal, supra, 34 LPRA Ap. II, R. 35(c). Además, debe incluir la cita de la ley, reglamento o disposición que se aleguen fueron violados, empero la omisión de dicha cita o una cita errónea se considerará como un defecto de forma. Regla 35(d) de Procedimiento Criminal, supra, 34 LPRA Ap. II, R. 35(d). Es decir, "si los hechos imputados son constitutivos de algún delito al amparo de las leyes penales de Puerto Rico, la acusación será suficiente, a menos que de esos hechos no se pueda identificar qué delito se cometió o se demuestre

que ese error de forma perjudica los derechos sustanciales del imputado". *Pueblo v. Ayala García, supra*, pág. 206. Lo eminente es que el pliego acusatorio provea información necesaria para que el acusado pueda preparar su defensa de forma adecuada. *Pueblo v. Meléndez Cartagena*, 106 DPR 338, 341 (1977). Por su parte, el acusado puede presentar una moción para desestimar la acusación o denuncia cuando una o la otra no imputa delito. Regla 64(a) de Procedimiento Criminal, *supra*, R. 64(a).

**III.**

En el caso de marras, el foro primario encontró culpable al Sr. Del Valle Negrón del delito de maltrato mediante amenaza, y, consecuentemente, lo condenó a tres (3) años de reclusión con el beneficio de sentencia suspendida y libertad a prueba.

Inconforme, el Sr. Del Valle Negrón arguyó que el foro primario incidió al declararlo culpable más allá de toda duda razonable, ante una acusación que no imputaba el delito de maltrato mediante amenaza, y por ausencia de prueba para configurar los elementos de dicho delito.

Por su parte, el Pueblo sostuvo que el Ministerio Público presentó prueba suficiente, por medio del testimonio de la Sra. Cruz Pérez, para la determinación condenatoria contra el Sr. Del Valle Negrón. Igualmente, arguyó que la acusación del delito, al amparo del Artículo 3.3 de la Ley Núm. 54-1989, *supra*, sec. 633, notificó al Sr. Del Valle Negrón de todos los hechos esenciales del delito y le imputó el mismo.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no incurrió en ninguno de los señalamientos de error.

Tal como expusimos en la sección anterior, comete el delito de maltrato mediante amenaza toda persona que amenazare con causarle daño a, entre otras, la persona con quien sostuvo una relación consensual o procreó un hijo o una hija. Artículo 3.3 de la

Ley Núm. 54-1989, *supra*, sec. 633. Asimismo, indicamos que el propósito fundamental del pliego acusatorio es proveer la información necesaria para que el acusado pueda preparar su defensa de forma adecuada. *Pueblo v. Ayala García*, *supra*, pág. 206. A través de la acusación presentada por el Ministerio Público contra el Sr. Del Valle Negrón, el Ministerio Publico arguyó que este amenazó a la Sra. Cruz Pérez, con quien sostuvo una relación consensual y procreó un hijo, "consistente en que le dijo que no se pusiera bruta porque se iba a joder y que él sabe a donde tiene que ir, que es al Cuartel General para que la jodan porque la Víctima es Agente de la policía de Puerto Rico".[6]

El Sr. Del Valle Negrón sostuvo, como tercer señalamiento de error, que la acusación no le imputó el delito en cuestión, ya que el Ministerio Público no incluyó en la acusación, la supuesta base de la amenaza; a saber, que si le pasaba algo a la amiga del Sr. Del Valle Negrón, entonces la Sra. Cruz Pérez pagaría las consecuencias. Del igual modo, expuso que el expresarle a alguien no "te pongas bruta" no constituía una amenaza ni maltrato, sino que, conforme al lenguaje coloquial, significaba "no hagas una estupidez". Sin embargo, los hechos incorporados en la acusación, ciertamente, imputaron al Sr. Del Valle Negrón el delito de maltrato mediante amenaza, conforme el Artículo 3.3 de Ley Núm. 54-1989, *supra*, sec. 633.

Específicamente, las alegaciones del pliego informaron que el Sr. Del Valle Negrón y la Sra. Cruz Pérez sostuvieron una relación consensual y procrearon un hijo. Aunque, según el Sr. Del Valle Negrón, el Ministerio Público no incorporó como supuesta base legal de la amenaza que si le pasaba algo a la amiga del Sr. Del Valle Negrón, entonces la Sra. Cruz Pérez pagaría las consecuencias, no

---

[6] *Íd.*, Entrada Núm. 12, Anejo 2.

cabe duda de que el Ministerio Público imputó al Sr. Del Valle Negrón de haber amenazado a la Sra. Cruz Pérez. Lo anterior, al expresarle que acudiría al cuartel general si ella se ponía "bruta", ya que ella era agente de la policía. Indubitablemente, una persona de inteligencia común podría entender de la acusación que este amenazó a la Sra. Cruz Pérez con hacerle daño, y, por ende, se acusaba al Sr. Del Valle Negrón por el delito de maltrato mediante amenaza. Regla 35(c) de Procedimiento Criminal, *supra.* En su consecuencia, el requisito constitucional de notificación adecuada al acusado fue debidamente satisfecho y, por ende, el foro primario no incurrió en el <u>tercer</u> señalamiento de error.

También, pormenorizamos en la sección previa que, si el Ministerio Público prueba más allá de toda duda razonable que el acusado cometió los hechos alegados, este último puede ser declarado culpable por el delito imputado. Regla 147 de Procedimiento Criminal, *supra*; *Pueblo v. Ayala García, supra*, pág. 206. Esto depende de la prueba desfilada en el juicio; es decir, que se prueben los elementos necesarios para concluir que se cometió la infracción, y el vínculo del acusado con ese hecho. *Pueblo v. Ayala García, supra*, pág. 206. Específicamente, se exige que la prueba establezca certeza moral que convenza, dirija la inteligencia y que satisfaga la razón. *Pueblo v. Pagán Santiago*, 130 DPR 470, 480 (1992); *Pueblo v. Bigio Pastrana*, 116 DPR 748, 760-761 (1985).

Por tanto, el *quantum* de prueba no equivale a una certeza matemática, más bien, exige " 'prueba satisfactoria y suficiente en derecho, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido' ". *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018) (*citando a Pueblo v. De Jesús Mercado*, 188 DPR 467, 475 (2013)). En el caso de la prueba testifical "la evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho,

salvo que otra cosa se disponga por ley". Regla 110(D) de Evidencia, 32 LPRA Ap. VI, R. 110(D). En otras palabras, la declaración de un testigo que sea creída por el juzgador de los hechos es suficiente para establecer cualquier hecho, aunque no se trate de un testimonio perfecto. *Pueblo v. Chévere Heredia*, 139 DPR 1, 15 (1995). De igual modo, la determinación de credibilidad que realiza el juzgador de los hechos a nivel de instancia es merecedora de gran deferencia por parte de los foros apelativos. Lo anterior, pues es el juez del foro primario quien, de ordinario, "está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue quien oyó y vio declarar a los testigos". *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009).

Según surge del testimonio de la Sra. Cruz Pérez, el Sr. Del Valle Negrón es el padre de su hijo.[7] El 6 de abril de 2025, acudió a la residencia del Sr. Del Valle Negrón para recoger al menor.[8] Testificó la Sra. Cruz Pérez que el Sr. Del Valle Negrón llevó los bultos del niño a su auto, donde le cuestionó al Sr. Del Valle Negrón por qué no había llevado al menor a Cayey junto a su amiga.[9] El Sr. Del Valle Negrón expresó a la Sra. Cruz Pérez que su amiga la quería conocer, empero la Sra. Cruz Pérez indicó que en ese momento no quería conocer a nadie porque no se sentía bien.[10] Dijo la Sra. Cruz Pérez que, no obstante, la actitud del Sr. Del Valle Negrón cambió y se tornó agresivo, hablándole fuerte y alzándole la voz.[11]

Expuso que el Sr. Del Valle Negrón le preguntó a la Sra. Cruz Pérez si tenía prueba de su amiga.[12] La Sra. Cruz Pérez contestó que sí y explicó que esa prueba consistía en una foto de WhatsApp que pudo ver luego de haber grabado un número desconocido del que le

---

[7] *Íd.*, Entrada Núm. 9, Anejo 1, pág. 14, L 1-3.
[8] *Íd.*, L 14-20.
[9] *Íd.*, pág. 15, L 5-13.
[10] *Íd.*, L 13-16.
[11] *Íd.*, pág. 21, L 15-23; pág. 22, L 1-6.
[12] *Íd.*, pág. 15, L 23; pág. 16, L 1-4.

llamaron.[13] Sin embargo, según testificó la Sra. Cruz Pérez, el Sr. Del Valle Negrón le manifestó que "si algo le llegaba a pasar a la amiga de él, él me iba a joder y que él sabía a donde ir para que me jodieran, que era el Cuartel General de la Policía, porque yo soy Policía";[14] y "[y]a yo iba a ver lo que me iba a pasar, que iba a tener, que iban haber consecuencias".[15] La Sra. Cruz Pérez testificó que, ante dichas expresiones, se sintió amenazada con relación a su trabajo. Específicamente, con miedo a que la fueran a suspender del sueldo y el empleo, mediante la presentación de una querella administrativa, pues su trabajo era el único sustento que tenía para su hijo.[16]

Continuó la Sra. Cruz Pérez expresando que el Sr. Del Valle Negrón le dijo que recordara que se encontraba en su casa y ella le indicó que cerrara la puerta de su guagua.[17] Al repetirle esto último, el Sr. Del Valle Negrón le declaró que iba a buscar a su amiga para confrontarlas, pero la Sra. Cruz Pérez contestó que no quería problemas, sino que deseaba irse y que el menor se encontraba en la parte de atrás del auto.[18] Testificó la Sra. Cruz Pérez que el Sr. Del Valle Negrón se molestó tanto que tiró la puerta bien duro dándole al pie del niño, quien tenía el pie un poco por fuera del vehículo, y como resultado, el menor empezó a llorar y a gritar que su papá le había dado con la puerta.[19]

Expresó la Sra. Cruz Pérez que intentó calmar al menor y a los minutos recibió una llamada del Sr. Del Valle Negrón, quien habló como si no hubiese pasado nada, para preguntarle si los tenis del menor estaban en el bulto.[20] La Sra. Cruz Pérez le comunicó al

---

[13] *Íd.*, L 4-8.
[14] *Íd.*, L 10-15.
[15] *Íd.*, L 19-21.
[16] *Íd.*, pág. 24, L 13-23; pág. 25, L 1-10.
[17] *Íd.*, pág. 17, L 3-6.
[18] *Íd.*, L 8-13.
[19] *Íd.*, pág. 18, L 13-20.
[20] *Íd.*, L 21-23; pág. 19, L 1-4.

Sr. Del Valle Negrón que no sabía, ya que estaba conduciendo, y le informó lo que ocurrió con el menor, subsiguientemente colgándole la llamada.[21] Asimismo, testificó la Sra. Cruz Pérez que colgó, ya que estaba llegando al Cuartel de la Policía en Salinas.[22] Continuó la Sra. Cruz Pérez aduciendo que acudió al cuartel para radicar una querella con el propósito de evitar que lo ocurrido perjudicara su trabajo.[23] Estando allí, la Sra. Cruz Pérez se comunicó con el sargento, quien realizó la querella, al amparo de la Ley Núm. 54-1989, *supra*, y la puso a llenar la planilla informativa, un escrito a puño y letra como parte del protocolo de dicho estatuto, sobre lo acontecido ese día.[24]

Además del testimonio de la Sra. Cruz Pérez, el Sr. Del Valle Negrón adujo en su *Alegato* que "[a]nte la conducta de la Sra. Cruz Pérez procedía lo que hizo el peticionario, advertirle de consecuencias si hacía algo incorrecto e ilegal contra su pareja".[25] No existe duda en cuanto a que se probaron todos los elementos del delito de maltrato y su conexión con el Sr. Del Valle Negrón. Ambos procrearon un hijo, y ante la negativa de la Sra. Cruz Pérez en conocer a la amiga del Sr. Del Valle Negrón, este procedió a amenazar a la Sra. Cruz Pérez con causarle daño. Específicamente, advirtió a la Sra. Cruz Pérez que la iba a "joder" y que él sabía a donde ir para que la "jodieran"; es decir, acudiendo a su lugar de trabajo, el único sustento que tiene para ella y su hijo. Por ende, por medio del testimonio de la Sra. Cruz Pérez, el Ministerio Público probó más allá de toda duda razonable que el Sr. Del Valle Negrón cometió el delito de maltrato por medio de amenaza, tipificado en el Artículo 3.3 de la Ley Núm. 54-1989, *supra*, sec. 633. Por tal razón,

---

[21] *Íd.*, pág. 19, L 4-6.
[22] *Íd.*, L 6-8.
[23] *Íd.*, pág. 26, L 9-14.
[24] *Íd.*, L 18-22; pág. 27, L 1-8.
[25] *Íd.*, Entrada Núm. 11, pág. 12.

en ausencia de pasión, prejuicio, parcialidad o error manifiesto, el TPI tampoco cometió el <u>primer</u> y <u>segundo</u> planteamientos de error.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones